## TAYLOR v. TAYLOR.

CANCELLATION OF INSTRUMENTS—DEEDS—PROOF.

On a bill by brothers of the grantor to cancel certain deeds placing the title of certain hotel property in the grantor and his wife as tenants by the entireties, the decree of the court below dismissing the bill for failure of proof, is affirmed on appeal.

Appeal from Muskegon; Barton, J., presiding. Submitted April 9, 1919. (Docket No. 20.) Decided May 29, 1919.

Bill by William P. Taylor and another against Anna Taylor and another for the cancellation of certain deeds. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*James E. Sullivan*, for plaintiffs.

*John A. McLaughlin* and *Oscar E. Waer*, for defendants.

BROOKE, J. The bill in this case is filed to secure the cancellation and delivery of two deeds executed

and delivered by one James C. Taylor on February 27, 1917. Said Taylor died four days later, on March 2, 1917.

The plaintiffs are brothers of James C. Taylor, deceased, and the defendant Anna Taylor is the widow of said deceased. The two plaintiffs and the defendant named are the only heirs at law of the deceased. Defendant Lillian Arnold has no interest in the litigation, she being merely the grantee in the first deed and the grantor in the second,—the conduit through whom the title to the property in question passed from James C. Taylor, deceased, to James C. Taylor and Anna Taylor as tenants by entireties. At the time of his death James C. Taylor was 54 years of age and had been married to Anna Taylor for some 12 years. The union was fruitless. He had been engaged for many years in the saloon or hotel business at Muskegon Heights and had accumulated some little property. A farm in the vicinity was owned by him, the title to which had for some time stood in the names of himself and wife as tenants by entireties. He was taken ill about the 14th of February with erysipelas and became rapidly worse, though not confined to his bed until on or about the 27th, the day the deeds were executed. On that day he asked one Haverstumpf, an old friend, to send for a Mr. Morris who was cashier of the First State Savings Bank of Muskegon Heights. The deceased was a stockholder and director as well as a considerable depositor in said bank. Mr. Morris at once responded to the call and was advised by deceased to fix the title to the hotel property, "like the farm." Morris asked him if he did not think a lawyer should be called in to handle such a matter, and the deceased replied: "Yes, you and Johnnie fix it." By "Johnnie" meaning Mr. McLaughlin, a local attorney, whom he had known many years. Morris immediately advised Mr. McLaughlin of the desire of

the deceased and McLaughlin prepared the deeds in question. They were taken to the bedside of the deceased in the hotel, the title to which was being changed, and there executed by deceased in the presence of two witnesses (nurses of the deceased), the acknowledgment being taken by one Glenn M. Porter, a notary public.

It is the contention of the plaintiffs that at the time of the execution of the deeds in question the deceased did not possess sufficient mental capacity; that he was not in a condition—

"capable of knowing and understanding the nature of the business he was then engaged in and the elements of that business and what was necessary to accomplish that business."

Nine witnesses were sworn at the hearing, all of whom gave testimony touching the mental condition of the deceased at the time the deeds were executed. An examination of the record discloses that aside from the testimony of the two plaintiffs who are vitally interested in the outcome of the controversy, there is no testimony calling in question the mental capacity of the deceased at the time in question. It is true that counsel for plaintiffs draws certain conclusions from the testimony of the attending physician which it is claimed support the contention that the deceased was, at the time the deed was executed, mentally incompetent. On the other hand we find the direct and positive testimony of the two nurses, Allard and Foley; Haverstumpf, an old friend of the deceased; McLaughlin, a lawyer, and legal adviser of the deceased; Porter, a notary public, and Morris, the cashier of the savings bank with whom he did business, all of whom are apparently without interest in the controversy, tending to support the conclusion that on the day in question the deceased was able to comprehend and did comprehend the nature of the business in which he

was engaged. Some argument is indulged in by counsel for plaintiffs based upon the shaky and partially illegible character of the signature of deceased to the instrument in question. This fact we think not controlling. The disease in its progress had entirely obliterated the sight of one of the eyes of the deceased and had caused the other eye to become much swollen. The physical ability to write his name clearly and legibly is not the test to be applied. Assuming that deceased had the mental capacity to fully understand the nature of the transaction the deed would have been just as valid had it been executed by his making a mark instead of writing his name.

It would be idle to set forth or even discuss with particularity the testimony of the several witnesses. The learned circuit judge who heard and saw them upon the stand in dismissing the bill said: "The plaintiff has failed in this case utterly." It is sufficient to say that with this conclusion we agree.

The decree dismissing the bill stands affirmed, with costs to appellees.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.